NEWTON *v.* UNITED STATES (No. 1608).[1]

1. EMIGRANT.

A citizen of the United States after residence in another country is not, upon returning, within the meaning of paragraph 582, tariff act of 1913, which admits free "professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession of persons emigrating to the United States."

2. CONSTRUCTION—CHANGE OF LEGISLATIVE LANGUAGE SIGNIFIES CHANGE OF INTENT.

By changing the language of this paragraph from "persons arriving," in earlier tariff laws, to "persons emigrating," in later ones, Congress evidently intended to narrow the class of persons who might claim under it.

United States Court of Customs Appeals, January 22, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38141.

[Affirmed.]

*Frank L. Lawrence* for appellant.

*Bert Hanson,* Assistant Attorney General (*Robert Hardison,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

On or about September 23, 1913, E. Avery Newton, a citizen of the United States, native born, but who had for five years immediately preceding that date been living and practicing his profession of physician and surgeon in Germany, left that country for this. Which one of our States was the place of his nativity does not appear, but as a witness before the Board of General Appraisers he said, referring to his departure from Germany, "I decided to come home very suddenly on account of death." At that time he owned and had in his possession certain professional books and instruments which he had been using in the practice of his profession in Germany. He was then uncertain in which State he would take up his residence, but soon after arriving in this country he selected the city of Los Angeles, Cal., and located there. Immediately thereafter he instructed the keeper for him of the goods in Germany to ship them to Los Angeles, at which place they arrived about February 25, 1914.

---

[1] Reported in T. D. 36127 (30 Treas. Dec., 170).

Upon entry they were assessed for duty under appropriate paragraphs of the tariff act of 1913. The importer protested, claiming free entry under paragraph 582 of the act, which is hereinafter quoted. This in substance provides that the professional books and instruments in the actual possession of "persons emigrating to the United States" shall be given free entry.

Upon hearing the Board of General Appraisers overruled the protest, and the case is here upon the importer's appeal.

He claims (1) that the goods were in his actual possession within the meaning of the paragraph, and (2) that he was at the time he departed from Germany a "person emigrating to the United States."

Of course, if his first contention be decided in his favor, it is of no avail unless it also appears that the second one is sound; hence we consider that first.

As the history of legislation upon this subject may tend to throw some light upon the meaning of the term "persons emigrating to the United States," we now refer thereto.

In the tariff act of 1883 the free list included "books, professional, of persons arriving in the United States," and "professional books, implements, instruments, and tools of trade, occupation, or employment of persons arriving in the United States"; and this is the earliest statute upon the subject to which our attention has been called.

In the act of 1890 the foregoing provisions seem to have been consolidated in paragraph 686. Hereinbelow we insert it and all other relevant free-entry paragraphs in succeeding tariff acts:

1890.

686. Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession at the time of persons arriving in the United States; * * *.

1894.

596. Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession at the time of persons arriving in the United States; * * *.

1897.

645. Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession at the time of persons emigrating to the United States; * * *.

1909.

656. Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession at the time of arrival of persons emigrating to the United States; * * *.

582. Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession of persons emigrating to the United States; . \* \* \*.

It will be noticed from the foregoing that the earlier statutes gave the privilege of free entry of the prescribed merchandise to " persons arriving in the United States," while, since 1897, it has only been allowed to persons *emigrating* to this country. The importer avers he is such a person and, in the first instance, his case stands or falls upon this claim.

We do not deem it necessary to enter, as we might, into a lengthy analytical discussion of the meaning of the word " emigrate," from which " emigrating " is derived. It is apparent that the Congress by substituting for the expression " persons arriving in the United States " that of " persons emigrating to the United States " designed to narrow the class of persons members of which might claim the exemption benefit. *Arriving* would apparently cover *all* persons reaching this country; and, if that were desired, there was no occasion to substitute *emigrating* therefor.

As an aid in the determination of the meaning of the word *emigrating*, we insert here some of the meanings attributed to " emigrate " by various lexicographers:

Standard Dictionary:

To go from one country, State, or region for the purpose of settling or residing in another; remove from home or native land.

Oxford Dictionary:

1. To remove out of a country for the purpose of settling in another. (b) In wider sense: To remove from one place to another. *Rare.*

Webster's Dictionary:

To leave a place of abode, esp., a country or State, for life or residence in another; to migrate.

Century Dictionary:

Move away, remove, depart. To quit one country, State, or region and settle in another; remove from one country or region to another for the purpose of residence; as Europeans *emigrate* to America.

The broadest of the foregoing definitions might possibly admit the conclusion that *emigrating* described the status of the importer when he was leaving Germany; and, had the change in the statute not been made, he would have been within its provisions at the time he *arrived* here. We think, however, in view of the legislative history and the context, the expression " persons emigrating to the United States " should be held to mean, as applied to the facts here, persons not citizens of this country who quit their own home or

country and come here for the purpose and with the intent of establishing here their residence. Obviously, we think, *emigrating* is commonly understood to be the removal from one's country, home, or native land to another country, there to reside, and the *emigrant* who does this becomes, in the ordinary acceptation of the term, an *immigrant* in the land or country to which he so removes.

The importer here does not answer to these requirements; confessedly, he "decided to come home" when he left Germany for the United States, which was his birthplace, the country of which he was then a citizen, and his home.

In G. A. 4336 (T. D. 20610), decided in January, 1899, construing paragraph 645 of the act of 1897, the precise question here under discussion was considered by the board and the same conclusion reached. We quote with approval from the board's decision in that case:

It being admitted that the protestant was a citizen of the United States, which necessarily implied the corollary of residence in this country at the time he went back to Europe, his return from that country to the country of his political citizenship would not, in our judgment, constitute him an emigrant from Germany within the meaning of the law under consideration.

The board in the cited opinion well observes that Vattel in his "Treatise on the Law of Nations" defines an "emigrant" as—

One who quits his country for any lawful reason, with a design to settle elsewhere, and who takes his family and property, if he has any, with him.

If Congress had disagreed with this interpretation of the act of 1897 it might well have revised the language of the paragraph in later acts; instead, however, it appears to have twice deliberately reenacted the same.

The Supreme Court in the Head Money cases (112 U. S., 580, at 595), speaking of "An act to regulate immigration," used the following language [italics ours]:

Its provisions * * * relate to the subject of immigration, and they are aptly designed to mitigate the evils inherent in the business of bringing *foreigners* to this country, as those evils affect both the immigrant and the people among whom he is suddenly brought and left to his own resources.

As we have already remarked, the *emigrant* abroad, embarking for this country, becomes the *immigrant* upon his arrival here, and, while the Supreme Court in the cited case was not undertaking to define either of these terms, it used in the language quoted the word "immigrant" as meaning a *foreigner* coming to our shores.

The importer is not a foreigner, but is a native-born citizen. He is not an immigrant here, but is a citizen returning home. He is not, therefore, entitled to free entry of the goods in question.

The judgment of the Board of General Appraisers is *affirmed.*